885 So.2d 813 (2001)
Brent Andre PARRIS
v.
STATE of Alabama.
No. CR-00-0406.
Court of Criminal Appeals of Alabama.
August 31, 2001.
Opinion on Return to Remand November 22, 2002.
As Modified on Denial of Rehearing March 21, 2003.
*820 Marcus W. Reid, Anniston, for appellant.
William H. Pryor, Jr., atty. gen., and Sandra J. Stewart and Michael B. Billingsley, asst. attys. gen., for appellee.
COBB, Judge.
On April 12, 1997, Brent Andre Parris was arrested and, on September 5, 1997, Parris was indicted for attempted murder, a violation of §§ 13A-6-2(a)(1) and 13A-4-2, Ala.Code 1975. On August 31, 2000, Parris was convicted of attempted murder. On October 11, 2000, the trial court sentenced him to serve 35 years in prison and ordered that this sentence was to run consecutively with Parris's sentence in another case. On October 17, 2000, Parris filed a "Motion for Judgment of Acquittal Pursuant to Rule 20.3 A.R.Cr.P. or in the Alternative Motion for a New Trial Pursuant to Rule 24.1 A.R.Cr.P." and a "Motion for Leave to Supplement his Motion for *821 Judgment of Acquittal or in the Alternative Motion for New Trial." The trial court summarily denied Parris's postconviction motions on November 15, 2000. This appeal followed.
Parris raises seventeen issues on appeal. However, we address only his argument that he was denied the right to a speedy trial, because we must remand the cause for further proceedings on the basis of that issue.
The following timeline contains the dates relevant to Parris's speedy trial claim:

April 12, 1997 Parris was arrested.
September 5, 1997 Parris was indicted for attempted murder.
October 20, 1997 The trial court granted Parris's fifth attorney's motion to withdraw.
October 29, 1997 The trial court scheduled the trial to begin the week of November 17,
 1997.
November 14, 1997 Parris's retained trial counsel filed his notice of appearance and a
 motion to continue.
November 20, 1997 The trial court continued the case at Parris's request.
January 6, 1998 The trial court rescheduled the trial for the week of January 26, 1998.
January 29, 1998 The trial court continued the case without explanation.
February 3, 1998 The trial court rescheduled the trial for the week of February 23, 1998.
February 27, 1998 The trial court continued the case, apparently at Parris's request.[1]
April 30, 1998 The trial court rescheduled the trial for the week of May 18, 1998.[2]
May 29, 1998 Parris filed his first motion for a speedy trial.
June 2, 1998 The trial court rescheduled the trial for the week of June 22, 1998.
June 22, 1998 The trial court continued the case without explanation.
August 3, 1998 The trial court rescheduled the trial for the week of August 24, 1998.
August 17, 1998 The State filed a motion to continue.
August 27, 1998 The trial court continued the case without explanation.[3]
September 22, 1998 The trial court lowered Parris's bond from $100,000 to $20,000.

*822
September 23, 1998 The trial court released Parris on bond.
October 13, 1998 The trial court revoked Parris's bond without a hearing.
October 19, 1998 The trial court rescheduled the trial for the week of October 26, 1998.
October 26, 1998 The trial court continued the case for trial and stated on the case
 action summary sheet, "Not Reached."
November 2, 1998 Parris filed his first motion to dismiss, alleging that his right to a
 speedy trial had been violated.
January 6, 1999 The trial court rescheduled the trial for the week of January 25, 1999.
January 25, 1999 The trial court continued the case for trial and stated on the case
 action summary sheet, "Not Reached."
April 7, 1999 The trial court rescheduled the trial for the week of April 27, 1999.
April 30, 1999 The trial court continued the case for trial and stated on the case
 action summary sheet, "Not Reached."
August 19, 1999 The trial court removed the case from its docket and ordered that "this
 case be continued generally and the Clerk is DIRECTED to not set
 this case except on a specific order of this Court."
August 25, 1999 Parris filed his second motion for a speedy trial.
September 21, 1999 The trial court denied Parris's second motion for a speedy trial.
October 13, 1999 Parris filed his second motion to dismiss, alleging that his right to a
 speedy trial had been violated.
October 22, 1999 The trial court denied Parris's second motion to dismiss.
December 27, 1999 Parris filed his third motion to dismiss, alleging that his bond had been
 wrongfully revoked.
January 19, 2000 The trial court denied Parris's third motion to dismiss.
March 27, 2000 Parris filed his first petition for a writ of mandamus, alleging that his
 right to a speedy trial had been violated.
June 26, 2000 The Court of Criminal Appeals, by order, dismissed Parris's petition
 for a writ of mandamus without prejudice to allow Parris to refile
 the petition if he was not tried by the week of August 28, 2000.
August 7, 2000 The trial court rescheduled the trial for the week of August 28, 2000.
August 10, 2000 Parris filed his fourth motion to dismiss "due to the death of a witness"
 and his second petition for a writ of mandamus.
August 29, 2000 The jury was struck.
August 30, 2000 The Court of Criminal Appeals, by order, denied Parris's second
 petition for a writ of mandamus.
August 31, 2000 Parris was convicted of attempted murder.

*823
October 11, 2000 The trial court sentenced Parris to serve 35 years in prison.

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." The Alabama Constitution guarantees the same. Article I, § 6, Ala. Const. 1901 ("In all criminal prosecutions, the accused has a right to... a speedy, public trial.") We apply the principles of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether a defendant has been denied his right to a speedy trial. In Barker, the United States Supreme Court prescribed a flexible balancing test which "comports with constitutional principles [and] places the primary burden on the courts and the prosecutors to assure that cases are brought to trial." 407 U.S. at 529, 92 S.Ct. 2182.
"A balancing test necessarily compels courts to approach speedy trials on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."
"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, the process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution."
407 U.S. at 530, 533, 92 S.Ct. 2182. Each factor is to be addressed in turn, weighing "the conduct of both the prosecution and the defendant." Id. at 530, 92 S.Ct. 2182.
We begin by evaluating the length of the delay in bringing Parris to trial. "The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S.Ct. 2182. The right to a speedy trial was triggered, in this case, by Parris's arrest. Kimbrell v. State, 659 So.2d 1039 (Ala.Crim.App.1995). Parris was incarcerated from the time of his arrest on April 12, 1997, until he was convicted on August 31, 2000, except for a period of approximately three weeks when he was released on bond. Thus, the delay in Parris's case amounted to over 40 months. The State concedes in its brief to this Court that the 40-month delay was presumptively prejudicial, and states that this Court should evaluate the remaining Barker factors. We agree. See Mansel v. State, 716 So.2d 234 (Ala.Crim.1997) (26-month delay was presumptively prejudicial); Howard v. State, 678 So.2d 302 (Ala.Crim.App.1996) (29-month delay was presumptively prejudicial). Therefore, we proceed to "further inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S.Ct. 2182.
We must now evaluate the reasons for the 40-month delay in bringing Parris to trial. As the Barker Court stated,

*824 "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."
Barker, 407 U.S. at 531, 92 S.Ct. 2182 (footnote omitted).
"Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him....
"Barker made it clear that `different weights [are to be] assigned to different reasons' for delay. Ibid. Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, cf. Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and its consequent threat to the fairness of the accused's trial."
Doggett v. United States, 505 U.S. 647, 657-58, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (bracketed language in original). See also Pierson v. State, 677 So.2d 830, 831 (Ala.Crim.App.1996)("`[N]eutral reasons' for delay, such as a crowded court docket, do not ordinarily require a dismissal of the case based on a violation of the right to a speedy trial."); Vincent v. State, 607 So.2d 1290, 1293 (Ala.Crim.App.1992) ("`[T]he congested trial docket was a neutral reason for the delay and should not weigh heavily against the State,' ... especially in view of the fact that the appellant did not raise a complaint during that time." (quoting Archer v. State, 643 So.2d 597, 599 (Ala.Crim.App.1991) (alteration in original))); Taylor v. State, 429 So.2d 1172, 1174 (Ala.Crim.App.1983) ("Although negligence is not weighed as heavily against the State as a deliberate attempt to delay the trial in order to hamper the defense, it must nevertheless be weighed against the State `since the ultimate responsibility for such circumstances must rest with the government rather than the defendant.' Barker, 407 U.S. at 531, 92 S.Ct. at 2192." (citation omitted)).
The trial court continued Parris's case ten times. Parris requested two of the continuances, according to the case action summary sheet; one continuance appears to have been at the request of the State. Of the seven times the trial court continued the case ex mero motu, three are without explanation in the record, and three consecutive continuances were because the trial court did not reach the case. The last time the trial court continued Parris's case, it ordered, for no reason apparent in the record, that Parris's case be removed completely from the docket until further order of the court. Parris's *825 case remained off of the docket for one year until Parris filed a petition for a writ of mandamus with this Court, and this Court dismissed the petition without prejudice contingent upon the trial court's placing Parris's case on the docket by August 28, 2000.
Barker v. Wingo instructs that we examine the reasons for the 40-month delay in bringing Parris to trial. From the record before us, we are unable to determine the exact reasons for some of the delays; therefore, we are unable to determine whether the reasons were neutral or whether they should be attributed to the government. For example, several continuances noted on the case action summary contain no reason for delay; several others indicate only that the case was "not reached." Most troubling to us is that, on August 19, 1999, the trial court removed the case from the docket and directed the clerk to set the case only on a specific order of the court. This Court is unable to make an informed decision regarding the reasons for this lengthy delay without additional information from the trial court.
We faced a similar situation in Bishop v. State, 656 So.2d 394, 397 (Ala.Crim.App.1994). In that case, we instructed the trial court as follows:
"Under the facts of this case, this Court is unable to find that the appellant has been denied his right to a speedy trial. However, neither can we determine that he has not been denied a speedy trial. Therefore, it is the judgment of this Court that this cause be remanded to the trial court with directions that the trial court conduct an evidentiary hearing. The appellant shall have the right to be represented by counsel and the right to be present at that hearing. At the conclusion of the hearing, the trial court shall apply the four-part test of Barker v. Wingo, supra, and enter specific and detailed written findings addressing the length of delay, the reason for the delay, the assertion of the right, and the prejudice to the appellant. The transcript of the hearing and the written findings of the trial court shall be forwarded to this Court within 120 days from the date of this opinion. On remand, should it become necessary, the trial court is authorized to grant the appellant whatever relief it deems reasonable."
Therefore, we remand this cause to the circuit court in order to give that court the opportunity to follow the directions we prescribed in Bishop. We refer the circuit court to the thorough remand order submitted by the circuit court in Bishop. See Bishop v. State, 656 So.2d 398, 398-404 (Ala.Crim.App.1994) (opinion on return to remand). A written return to remand order containing detailed written findings regarding the Barker factors is due to be filed with this Court within 90 days from the date of the release of this opinion. We defer resolution of the speedy trial issue, and the remaining issues, pending compliance with the directives in this opinion.
REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.

On Return to Remand
COBB, Judge.
On April 12, 1997, Brent Andre Parris was arrested and, on September 5, 1997, was indicted for attempted murder, a violation of §§ 13A-6-2(a)(1) and 13A-4-2, Ala.Code 1975. On August 31, 2000, Parris was convicted of attempted murder. On October 11, 2000, the trial court sentenced him to serve 35 years in prison and ordered that this sentence was to run consecutively with Parris's sentence in another case. On October 17, 2000, Parris filed *826 a "Motion for Judgment of Acquittal Pursuant to Rule 20.3 [Ala. R.Crim. P.,] or in the Alternative Motion for a New Trial Pursuant to Rule 24.1 [Ala. R.Crim. P.]" and a "Motion for Leave to Supplement his Motion for Judgment of Acquittal or in the Alternative Motion for New Trial." The trial court summarily denied Parris's postconviction motions on November 15, 2000.[1]
On appeal, this Court remanded this cause for the circuit to hold an evidentiary hearing on Parris's speedy-trial claim. Parris v. State, 885 So.2d 813 (Ala.Crim.App.2001). On return to remand, we again remand this cause, but discuss the remainder of the issues pending on appeal.
The facts adduced at trial reveal the following: On April 12, 1997, Parris was visiting his three-and-a-half-month-old baby and his girlfriend, the baby's mother, at the girlfriend's brother and sister-in-law's home. At some point late in the evening, Parris and his girlfriend began to argue. Parris wanted his girlfriend and the baby to leave with him and go to a motel. His girlfriend was crying. Parris placed the baby carrier in his vehicle, but the girlfriend refused to get into the vehicle and remained on the front porch. Parris drove off with the baby in the backseat, but returned shortly to find his girlfriend still on the front porch, crying.
The girlfriend's brother, who was mentally challenged, had been in the house during the entire argument. When Parris returned, the brother grabbed a knife from his bedside drawer, walked out of the house, and approached Parris's vehicle from the driver's side. Parris had his window down. The brother reached into Parris's window and struck him in the face with the knife. The brother's parents, in the meantime, had come out onto the front porch. They yelled for the brother to return to the house. As the brother began to walk back to the house, Parris got out of his car and shot the brother in the back. The brother survived, but was paralyzed from the chest down.

I.
Parris claims that he was denied a speedy trial. After finding the length of the delay to be presumptively prejudicial, pursuant to Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), this Court remanded the cause to the trial court for it to evaluate the other three Barker factors and determine whether Parris had been denied his right to a speedy trial. See Bishop v. State, 656 So.2d 394 (Ala.Crim.App.1994).
In response to this Court's remand, the trial court issued an order that stated, in pertinent part:
"It is the finding of this Court that, although the length of time between Defendant's arrest and trial in this matter was presumptively prejudicial, a balancing test shows that there were compelling reasons for the delay. The Case Action Summary Sheet indicates that this case was continued one time at the request of the State, and two times at the request of [Parris] (although counsel for [Parris] now disputes one of those continuances). At every other setting of this case for trial, the parties announced the case ready for trial.

*827 "During the time that this case was pending, this Court operated under a severe backlog of cases. In order to deal with the over-crowded court docket, and a crowded jail system, the Court, and the other judges of this jurisdiction, have given priority to `jail cases,'[[2]] which are any pending cases for which the Defendant is currently incarcerated due to that charge. In January 1999, [Parris] was tried and convicted on a charge of Assault in the Second Degree, CC-96-901, and was sentenced to ten (10) years in prison. There was a pending Motion for Speedy Trial in that matter as well, and the Assault case was significantly older than the case in question.
"Following the imposition of that ten-year sentence, [Parris] was transferred to the State prison system to begin serving that term, and his remaining case, CC-97-1099, was classified as a `prison case.' In addition, [Parris] was also serving a jail sentence imposed by the Etowah County District Court on a charge of Hindering Prosecution in the Second Degree, DC-98-3667, from October 3, 1998, to March 25, 1999.
"On August 25, 1999, this Court entered an Order removing the case from its trial docket, and continuing it generally. This order was entered by the Court, ex mero motu, based upon the following factors:
"a. Parris's case was considered at that time to be a `prison case' and therefore did not receive the same priority accorded to `jail cases.'
"b. This case had not been reached on prior dockets because of other cases being called out for trial, *828 many of which were considerably older than the charge pending against [Parris].
"c. This Court found that, in the interests of justice, the case should be removed from the Docket until such time as the Court had disposed of some of the older cases that were clogging its dockets. This action was not taken in order to have a detrimental effect on [Parris] or his ability to present a defense in this case; it was simply an effort by this Court to deal with the overwhelming number of pending cases in a expeditious fashion.
"Subsequent to this Court's order, the Court of Criminal Appeals dismissed [Parris's] March 2000 petition for writ of mandamus without prejudice, granting [Parris] leave to re-file same if the case were not tried by the week of August 28, 2000. The case was tried during that week, and [Parris] was convicted as charged. There is no evidence before this Court of any attempt, deliberate or otherwise, on the part of the State to delay the trial of the case. There was a valid, nondiscriminatory basis for the delay of trial prior to August 1999, and for this Court's Order removing the case from the dockets on August 25, 1999. It is the finding of this Court that, although the length of time between [Parris's] arrest and trial in this matter was presumptively prejudicial, a balancing test as prescribed in Barker, supra, shows that there were compelling reasons for the delay.
"[Parris] vigorously asserted his right to a speedy trial on several occasions, both through counsel and pro se. He argued prior to the commencement of the trial that he was prejudiced by the delay in the trial to the extent that he was unable to adequately defend the charges. This issue was asserted through [Parris's] petitions for mandamus to the Court of Criminal Appeals.
"Lengthy testimony was presented by [Parris] and his trial counsel ... alleging that [Parris] was prejudiced in the defense of the case, and personally, by the delay in the trial of this case. Each of these assertions is addressed below.
"a. [Parris] claims that he was unable to adequately defend the charges against him due to the death or unavailability of three witnesses:
"1. Kelly Cheat, a factual witness, in the case, died in February 1998, shortly after the indictment of [Parris]. Her death was prior to [Parris's] assertion of his right to speedy trial; accordingly, this argument is without merit.
"2. Karen Whorton, a nurse who took the urine sample from the victim in the case, also died prior to trial. [Parris] asserted that her testimony concerning the chain of custody of that sample would have made the results of the alcohol and drug screens admissible in trial. However, prior to the commencement of trial, this Court heard testimony from Dr. Jack Kalen, Alabama Department of Forensic Sciences, concerning the nature and reliability of the tests conducted, and ruled the evidence inadmissible. While chain of custody was a factor that was considered by the Court, Dr. Kalen's testimony concerning the reliability of the test was determinative of the issue. The unavailability of *829 Whorton's testimony did not adversely affect [Parris's] presentation of the case.
"3. [Parris] further claimed prejudice based on his inability to locate Doneeta Hoyt, a nurse at the Etowah County Jail at the time of the incident, to testify concerning the injuries to [Parris] at the time of his arrest. [Parris's] trial counsel testified that he last spoke with Hoyt by telephone several months prior to the trial date. He stated that he was unable to reach Hoyt by telephone during the week of trial, and that letters sent to her last known address were returned to his office. He did not request assistance from the Court, the Sheriff's Department, or the local phone company in locating the witness, nor did he make any attempt to visit her residence or meet with her personally. The Court notes that [Parris's] medical records were admitted into evidence; further, there is no evidence before this Court that reasonable attempts were made by [Parris] to locate this witness prior to trial. Accordingly, [Parris's] inability to locate Hoyt `could just as easily be the result of [Parris's] own negligence as the result of any delay which could be attributed to the State.' Austin v. State, 562 So.2d 630, 633 (Ala.Crim.App.1989).
"b. [Parris] alleged that he was not eligible for programs in the prison system that he would otherwise have been able to participate in due to the detainer on him for the pending case. In support of this argument, [Parris] offered specific portions of his prison record into evidence, as well as his own testimony concerning the impact that the detainer had on his eligibility for programs during incarceration. A review of [Parris's] prison records, [Parris's] testimony, and the testimony of Walter Davis, a classifications specialist from St. Clair Correctional Facility, shows that, in fact, [Parris's] own actions, behavior, background and psychological records have been the primary impediment to his eligibility for programs with the prison system.
"Walter Davis testified concerning the manner in which inmates are evaluated and classified within the prison system, including a description of the scoring process for the Inmate Classification forms. Davis testified that from his initial classification, [Parris] has been classified at Security Level 5. Because he has scored at Level 5, the second page of the evaluation, which deals with pending detainers, was not considered. In addition, Davis testified that a pending detainer would not affect [Parris's] ability to participate in programs; rather, an inmate's security level affects the eligibility for programs.
"Davis testified that [Parris] has remained in Administrative Segregation voluntarily throughout his incarceration, and on that basis, would not be eligible for programs. In order for [Parris's] security level to be reduced, he would have to request a return to the general population from the Administrative Segregation Review Board. Although Davis indicated that [Parris] did request to see the Board on one occasion, he failed to *830 appear at the meeting. [Parris] testified that he had requested to participate in Therapeutic Community, a substance abuse/anger management program, and that his request was denied; however, Davis's records did not indicate such a request.
"There was extensive cross-examination of Davis concerning the manner in which the classifications specialist initially placed [Parris] at Security Level 5. Based upon Davis's testimony, and [Parris's] own statement that he would not go to general population in a maximum security camp, it is apparent that [Parris] has made no efforts to reduce the security level at which he is housed. Further, [Parris] also testified that had he been transferred to a medium security camp, he would not [have been] eligible for programs until after two (2) years of incarceration.
"[Parris] cites Ex parte Slaughter, 377 So.2d 632 (Ala.1979), to support his argument that his testimony or assertions are sufficient evidence to show prejudice to him due to the delay in the trial dates. However, the facts in the Slaughter decision are distinguishable from the case at hand; there, `[t]he state advanced no evidence to contradict petitioner's assertions.' Id., at 634. In this case, Davis's testimony, the prison records introduced by [Parris], and [Parris's] own testimony supports a finding that the detainer against [Parris] did not impact his eligibility to participate in programs within the prison system.
"[Parris] further alleged that he was denied the ability to serve concurrent sentences due to the denial of a speedy trial. This Court informed the parties prior to the trial of either of [Parris's] cases that it would not consider ordering the sentences in these offenses to run concurrently, in the event of conviction.
"Having considered the testimony, the records introduced into evidence, the arguments of Counsel, and the applicable law, it is the finding of this Court that the delay in the trial of [Parris's] case was justified, and that although he did assert his right to a speedy trial, he has failed to show actual or presumed prejudice to either his defense or to his person based upon said delay. Accordingly, this Court finds that [Parris's] right to a speedy trial was not denied.
(C. 19-23; emphasis in original.)
After a careful review of the extensive record submitted on return to remand, we hold that the record supports the trial court's findings, and we adopt those findings as part of this opinion. Therefore, Parris's argument is without merit.

II.
Parris argues that the trial court erred by refusing to allow the knife belonging to the victim to be taken into the jury room during deliberations. Specifically, Parris complains that, although the knife had not been admitted into evidence, "`the nature and character of its frequent use compelled its introduction.' Arrick v. Fanning, 35 Ala.App. 409, 47 So.2d 708, 710 (1950)."
At trial, during jury deliberations, the jury sent a note to the trial court stating, "We don't have the knife. Can we have it?" (R. 431.) The State objected on the ground that the knife had not been admitted into evidence, and the trial court sustained the objection. Parris again complained of the alleged error in his motion for a new trial.
We review the trial court's decision not to send the knife into the jury deliberations for an abuse of discretion. See generally Smith v. State, [Ms. CR-97-0069, *831 December 22, 2000] ___ So.2d ___ (Ala.Crim.App.2000).
As the State points out:
"Rule 22.1, Ala. R.Crim. P., lists the materials that a jury is permitted to take to the jury room. This section states, `Within the exercise of its discretion, the court may permit the jurors, upon retiring for deliberation, to take with them exhibits, writings, and documents that have been received into evidence.' This is also specifically provided for in § 12-16-14, Ala.Code 1975. McElroy's Alabama Evidence states:
"`It is the customary, almost invariable, trial court practice to permit the jury, on their retirement to deliberate on the case, to take to the jury room an exhibit which has been placed in evidence. It is provided statutorily that: "All instruments of evidence and depositions read to the jury may be taken out by them on their retirement." This statute has been interpreted as not requiring ordinarily that an item of demonstrative evidence be taken to the jury room, but, rather, as investing the trial court with measurable discretion to allow or disallow it to go to the jury room. It has been held, for example, that the trial judge has the discretion to allow or disallow a deposition, written testimony or a tape recording to be taken by the jury on retirement.'
"McElroy's Alabama Evidence, § 10.04(1) (5th ed.1996)."
Smith, ___ So.2d at ___.
The State and Parris's trial counsel mentioned the knife in their opening arguments. The State and trial counsel also referred to the knife in closing arguments. However, the knife was not introduced or placed in evidence in connection with any testimony. See, e.g., Latimer v. State, 659 So.2d 129 (Ala.Crim.App.1994); Jolly v. State, 405 So.2d 76 (Ala.Crim.App.1981). With this limited usage, the knife was demonstrative evidence and not imperative to the disposition of the case. Therefore, the trial court did not abuse its discretion by not allowing the knife to be sent to the jury room during deliberations.

III.
Parris argues that the trial court erred by denying his motions for a judgment of acquittal and by denying his motion for a new trial, in which he argued that the State presented insufficient evidence to support Parris's conviction for attempted first-degree murder. Specifically, Parris argues that there was insufficient evidence showing that, when he fired the weapon at the victim, he intended to kill the victim. Rather, he argues, his act of shooting the victim was provoked by a sudden heat of passion and, therefore, it amounted to attempted manslaughter, not attempted murder.
"Appellate courts are limited in reviewing a trial court's denial of a motion for judgment of acquittal grounded on insufficiency." McFarland v. State, 581 So.2d 1249, 1253 (Ala.Crim.App.1991). "The standard of review in determining sufficiency of evidence is whether evidence existed at the time [Parris's] motion for acquittal was made, from which the jury could by fair inference find [him] guilty." Linzy v. State, 455 So.2d 260, 262 (Ala.Crim.App.1984). In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the State. Linzy, supra.
"`"In Alabama a person commits the crime of attempt to murder if he intends to cause the death of another person and does any overt act towards the commission of that intent. Alabama Code 1975, Sections 13A-4-2 *832 (the attempt statute), and 13A-6-2 (murder)." Chaney v. State, 417 So.2d 625, 626-27 (Ala.Cr.App.1982). See also Barnes v. State, 571 So.2d 372, 374 (Ala.Cr.App.1990). "Attempted murder is a specific intent crime.... An attempt to commit murder requires the perpetrator to act with the specific intent to commit murder.... A general felonious intent is not sufficient." Free v. State, 455 So.2d 137, 147 (Ala.Cr.App.1984).'
"Minshew v. State, 594 So.2d 703, 704 (Ala.Cr.App.1991).' "While proof of the intent to murder is an element of the burden of proof resting on the state, this intent is not susceptible of positive proof, but rests in inference to be drawn by the jury from all the evidence in the case."' Id. at 708, quoting Williams v. State, 13 Ala.App. 133, 137, 69 So. 376, 377 (1915). Intent may be presumed from the use of a deadly weapon, the character of the assault, and other attendant circumstances surrounding the assault. Chaney v. State, 417 So.2d 625 (Ala.Cr.App.1982). Furthermore, `[t]he question of intent in an attempt case "belong[s] exclusively to the jury to decide."' Minshew, 594 So.2d at 708, quoting United States v. Quincy, 31 U.S. (6 Pet.) 445, 8 L.Ed. 458 (1832)."
Wells v. State, 768 So.2d 412, 415 (Ala.Crim.App.1999).
The evidence at trial showed that Parris drew his gun from under the seat of his vehicle and, as the victim retreated to the house, Parris aimed and fired at the victim's back. Certainly, a jury could infer from Parris's firing a weapon into the victim's spinal cord that Parris intended to kill the victim. See, e.g., Smith v. State, 745 So.2d 922 (Ala.Crim.App.1999). Therefore, this argument is without merit.[3]

IV.
Parris argues that the trial court erred to reversal by allowing the victim's neurosurgeon to testify as to the positions of the parties during the shooting. After taking the witness on individual voir dire, defense counsel objected to the neurosurgeon's testimony regarding firearms because the doctor was not qualified to so testify. Parris's specific objection at trial, and his argument on appeal, is that the neurosurgeon did not have the requisite knowledge to testify about the trajectory of the bullet and the positions of the parties at the time of the shooting.
We review the trial court's decision to allow the neurosurgeon to testify, based on his assessment of the bullet wound, for an abuse of discretion. See generally Travis v. State, 776 So.2d 819 (Ala.Crim.App.1997).
Assuming, without deciding, that the trial court erred by allowing the neurosurgeon to so testify, such an error is not reversible. "Objections that an expert lacks the requisite knowledge go to the weight, not the admissibility, of the expert's testimony. Holland v. State, 666 So.2d 547, 548 (Ala.Crim.App.1995)." R.D. v. State, 706 So.2d 770, 776 (Ala.Crim.App.1997). Therefore, Parris's argument for reversal is without merit.

V.
Parris argues that the trial court erred by refusing to charge the jury on lesser-included offenses, by issuing a misleading *833 charge on self-defense, and by erroneously charging the jury regarding the requisite intent.
At trial, following the trial court's instructions to the jury, Parris objected on three specific grounds: that the trial court failed to give requested instruction number 14;[4] that the trial court failed to instruct on second- and third-degree assault;[5] and that the trial court failed to instruct adequately on self-defense in that the trial court did not offer the jury the opportunity to find that the victim was engaged in either a kidnapping or second-degree assault at the time Parris shot him.
A trial court has broad discretion in formulating its jury instructions. Williams v. State, 611 So.2d 1119, 1123 (Ala.Crim.App.1992). When reviewing a trial court's instructions, "`the court's charge must be taken as a whole, and the portions challenged are not to be isolated therefrom or taken out of context, but rather considered together.'" Self v. State, 620 So.2d 110, 113 (Ala.Crim.App.1992) (quoting Porter v. State, 520 So.2d 235, 237 (Ala.Crim.App.1987)). We address each specific jury-instruction argument in turn.

A. Lesser-Included Offenses
Parris argues on appeal that the trial court should have instructed the jury on second- and third-degree assault.
"`An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala.App. 108, 180 So.2d 279 (1965). In fact, our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So. 561 (1934).'
"Chavers v. State, 361 So.2d 1106, 1107 (Ala.1978); Ex parte Hannah, 527 So.2d 675, 676 (Ala.1988); Ex parte Oliver, 518 So.2d 705 (Ala.1987)."
Ex parte Long, 600 So.2d 982, 986 (Ala.1992), overruled on other grounds, Ex parte Edwards, 816 So.2d 98 (Ala.2001).
The evidence at trial revealed that Parris caused serious physical injury[6] to *834 the victim; the victim was permanently paralyzed from the chest down as a result of Parris's shooting him in the back. See Booker v. State, 645 So.2d 355 (Ala.Crim.App.1994). Thus, there was no rational basis for an instruction on attempted third-degree assault, which requires proof of only a physical injury, not a serious physical injury. § 13A-6-22, Ala.Code 1975. See also Booker, supra.
In order for a jury instruction on second-degree assault to have been appropriate, there would have had to have been evidence that Parris recklessly caused the victim serious injury. See 13A-6-21(a)(3), Ala.Code 1975. However, Parris's theory at trial was that, although he intentionally shot the victim, he did so in self-defense. Thus, there was no evidence of a reckless intent on Parris's part, only evidence of intentional conduct. See Lacy v. State, 629 So.2d 688, 689 (Ala.Crim.App.1993) (a claim of self-defense serves as an admission that one's conduct is intentional; a person cannot recklessly or negligently defend himself). Therefore, a jury instruction on second-degree assault had no rational basis in the evidence presented at trial, and such an instruction was not appropriate.
Because the evidence at trial did not offer any reasonable theory to support jury charges on second- and third-degree assault, Parris's arguments on appeal are without merit.

B. Self-Defense
Parris argues that the trial court's instructions on self-defense "were presented in a confusing and misleading manner." (Parris's brief, p. 64.) Parris also argues that he "was prejudiced in that [he] was deprived of an opportunity to prepare and present an intelligent closing argument to the jury by virtue of the Court giving a paraphrased self-defense charge...." (Parris's brief, p. 77.)
At trial, Parris objected when the trial court brought the jury back in order to complete the instruction on self-defense. (An incomplete instruction had inadvertently been given.) Parris objected at trial to the timing of the correction because the jury had already begun its deliberations. The arguments he advances on appealthat the instruction was "confusing and misleading" and that his closing argument was affectedare not the same arguments he advanced at trial. A specific ground of objection waives all others not specified, and the trial court will not be put in error on a ground not assigned at trial. See Ayers v. State, 659 So.2d 177, 180 (Ala.Crim.App.1994). Therefore, his argument on appeal is not properly before us.

C. Intent
Parris argues that the trial court erred by failing to instruct the jury that it could find him guilty of attempted murder if it found that his actions were intentional or reckless. Parris did not raise this argument in the trial court; therefore, he did not receive an adverse ruling. Thus, he has not preserved this argument for appellate review. Weaver v. State, 763 So.2d 972 (Ala.Crim.App.1998).

VI.
Parris argues that the trial court erred by suppressing the results of the victim's urine drug screen. At trial, the State filed a motion in limine regarding the test results. The trial court conducted a hearing. The State called as its witness Dr. Jack Kalim, the supervisor of the Alabama Department of Forensic Sciences toxicology section. Dr. Kalim testified that, in his opinion, the test results, without further confirmation, were insufficient and unreliable evidence indicating that the victim tested *835 positive for drug use on the night in question. Parris did not offer any rebuttal evidence. The trial court granted the State's motion in limine.
As the State points out, Parris has never proffered a legal basis for the admission of the drug-screen report. At the hearing on the motion in limine, trial counsel stated that the report was to be used to bolster his self-defense theory and for the jurors' consideration, "whatever they want to consider it for." (R. 69.) Although the severity of the cut to Parris's face inflicted by the victim was at issue at trial, there was never an issue as to whether the victim attacked Parris first; the evidence at trial revealed that the victim did indeed attack Parris first. It is unclear how the amount of drugs in the victim's system as he retreated from Parris, and was nonetheless shot in the back, is relevant. The victim's state of mind was not at issue. See Ex parte Scott, 728 So.2d 172 (Ala.1998). That is, the ultimate issue at trial was not whether the victim was intoxicated or impaired; the victim's actions were proved to be erratic. The ultimate issue was whether the force with which Parris responded to the victim, who was retreating, was justified. Therefore, evidence of the victim's drug use was irrelevant.
Clearly, evidence that the victim was a drug user indicates bad character, see Rule 404(b), Ala. R. Evid., and is prejudicial. We can see no other reason for the admission of evidence of the victim's drug use other than to prove bad character. See Tabb v. State, 553 So.2d 628 (Ala.Crim.App.1988). In this case, the prejudice is not outweighed by an apparent total lack of relevance. Therefore, because the evidence in this case is both irrelevant and prejudicial, the trial court did not err by granting the State's motion in limine. See Rules 402 and 404, Ala. R. Evid. Parris's argument is thus without merit.

VII.
Parris argues that the trial court's revocation in 1998 of his bond without a hearing, in violation of Rule 7.5, Ala. R.Crim. P., and without notifying Parris's counsel constituted reversible error. Parris raised this argument in his third pretrial motion to dismiss. However, the question of pretrial bond is moot when the defendant has been convicted and sentenced on the charges for which he is being held. See Hold v. State, 485 So.2d 801, 803 (Ala.Crim.App.1986). Parris's remedy would have been to file a petition for a writ of habeas corpus at the tine of the alleged pretrial denial of due process. See Hold, supra. Therefore, we do not address this argument on direct appeal from Parris's conviction and sentence.

VIII.
Parris argues that the trial court erred to reversal by denying him an arraignment hearing.[7] As the State points out, Parris did not voice this objection before the jury returned its verdict. Rather, he raised this argument for the first time in an untimely motion for a new trial.[8] "A claim first presented in an untimely *836 motion for new trial is not preserved for appellate review and may not be considered on appeal from the judgment of conviction. Ex parte O'Leary, 417 So.2d 232, 240 (Ala.1982)." Ross v. State, 581 So.2d 495, 496 (Ala.1991). Therefore, because Parris did not timely raise this argument in the trial court, he has not preserved it for appellate review.

IX.
Parris argues that the trial court erroneously denied him "critical Brady[[9]] impeachment evidence regarding State's witness Bernice Conner." (Parris's brief, p. 92.) Specifically, he complains that the trial court erroneously failed to order the prosecution to provide him with "rap sheet[s] and other information" pertaining to Conner's alleged criminal history.
At trial, although Parris had information that proved that Conner had been arrested for a drug offense, but that the case had been dismissed, he maintained that the prosecution should have provided him with other records to verify Conner's lack of criminal history. Although he cites numerous cases dealing with Brady issues, Parris cites no case standing for the proposition that the prosecution is required to provide the defense with otherwise attainable information regarding the criminal backgrounds of State witnesses; we find no case so holding, and, in fact, we find caselaw to support our disagreement with Parris's proposition that the prosecution was under any duty to provide Parris with what was essentially public information.
"As a general rule, the government need not disclose evidence available to the defense from other sources or evidence that the prosecution could not reasonably be imputed to have knowledge of or control over. Mills v. Singletary, 63 F.3d 999 (11th Cir.1995), cert. denied, 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996); United States v. Moore, 25 F.3d 563 (7th Cir.), cert. denied, 513 U.S. 939, 115 S.Ct. 341, 130 L.Ed.2d 297 (1994).
"We have held in Alabama in a number of cases that a defendant is not entitled to the general disclosure of the criminal records of the state's witnesses. See, e.g., Davis v. State, 554 So.2d 1094 (Ala.Crim.App.1984), aff'd, 554 So.2d 1111 (Ala.1989), cert. denied, 498 U.S. 1127, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991); Wright v. State, 424 So.2d 684 (Ala.Crim.App.1982) (no absolute right of disclosure of criminal records of state's witnesses); Mardis v. State, 423 So.2d 331 (Ala.Crim.App.1982); Mack v. State, 375 So.2d 476 (Ala.Crim.App.1978), aff'd, 375 So.2d 504 (Ala.1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (Ala.1980). We have also held that the trial court's refusal to order the prosecution, pursuant to a defendant's discovery motion, to provide the criminal record of each expected witness for the state was not a violation of Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),] and its progeny. Davis v. State, 554 So.2d at 1100."
Hardy v. State, 804 So.2d 247, 286 (Ala.Crim.App.1999).
Therefore, because Parris already had the information he requested and had access to public documents to verify that information and because the trial court did not err by refusing to order the prosecution to provide Parris with any other information, *837 as it was entitled to do by law, Parris's argument is completely without merit.

X.
Parris argues that the trial court erred "by refusing to grant [his] motion to change [the] place of [the] trial." (Parris's brief, p. 98.) Parris moved for a change of venue, and the trial court withheld its ruling until after voir dire by both parties on the subject of pretrial publicity. After voir dire, the trial court denied the motion.
"This Court, in Ex parte Grayson, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985), set out the standard for determining whether to grant a criminal defendant's motion for a change of venue on the basis of publicity surrounding the case:
"`Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. In order [for the court] to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Newspaper articles or widespread publicity, without more, [is] insufficient to [support] a motion for change of venue....
"`The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Thus, "[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination."'
"Grayson, 479 So.2d at 80 (citations omitted) (quoting Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App.1978)). Furthermore, Alabama courts have held that the passage of time is a factor that can bring objectivity to a case in which the pretrial publicity has been extensive. Holladay v. State, 549 So.2d 122 (Ala.Crim.App.1988), aff'd, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989)."
Ex parte Travis, 776 So.2d 874, 877-78 (Ala.2000).
Parris attached to his motion for a change of venue newspaper articles from October 1998 to November 1998. As far as this Court can tell,[10] the articles did not contain sensational, accusatory, or denunciatory statements so as to make a fair trial impossible. Oryang v. State, 642 So.2d 989, 992 (Ala.Crim.App.1994) ("`"`Newspaper articles alone would not necessitate a change of venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusational denunciatory statements, that a fair and impartial trial was impossible. Patton v. State, 246 Ala. 639, 21 So.2d 844 [1945].'" Thompson v. State, [581 So.2d 1216, 1233 (Ala.Crim.App.1991)], quoting McLaren v. State, 353 So.2d 24, 31 (Ala.Cr.App.), cert. denied, 353 So.2d 35 (Ala.1977).'"). Those articles, although mentioning Parris, mostly focusing on his cellmate, an escaped convict named Mario Centobie, hardly created such an environment that "the community was saturated with prejudicial publicity."
Moreover, even assuming that the community was saturated with prejudicial publicity, there is no indication that the jurors were biased by the publicity. The articles were published nearly two years before *838 Parris's trial. During voir dire, none of the jurors acknowledged knowing anything about the case when the trial court questioned them. In fact, none of the jurors acknowledged ever having heard of Parris when the prosecutor questioned them. Defense counsel did not ask a single question regarding whether anyone in the venire had heard of Parris or his connection to Mario Centobie. Parris has shown absolutely no evidence of any bias on the part of the jurors.
Because Parris has not shown that the community was saturated with prejudicial publicity regarding this incident and because he has failed to plead or prove any juror bias, this argument is without merit.

XI.
Parris argues that the trial court erroneously allowed the admission of a "victim impact report" at his sentencing hearing. Parris lists four alleged errors in the report. At trial, although he questioned the accuracy of one statement in the report, Parris did not object to the report's admission. Because he did not first object to the admission of the report to the trial court and did not obtain an adverse ruling, Parris has not preserved this issue for appellate review. See Goodson v. State, 540 So.2d 789, 791 (Ala.Crim.App.1988) ("In order for this court to review an alleged erroneous admission of evidence, a timely objection must be made to the introduction of the evidence, specific grounds for the objection should be stated and a ruling on the objection must be made by the trial court.").

XII.
Parris argues that the trial court erroneously denied his Batson[11] motion. Parris takes issue with the prosecution's striking a black juror who, during voir dire, told the trial judge that he had purposefully sought out a gentleman with whom his sister had had an earlier altercation. The juror confessed to getting into a fistfight with the gentleman. At trial, the prosecutor stated the following as his reason for his peremptory strike of the juror:
"[W]ith regard to [the juror in question], if part of the defense in this case is going to be that it's okay to attack someone and shoot them from behind after you've been attacked, it's the situation that [the juror] described.... [H]is sister had been attacked and he had some time to think about it and went and sought out the person that attacked her and attacked that person. That's why it was just too close for us to risk leaving [that individual] on this jury."
(R. 103-04.) After the prosecution offered this explanation, Parris did not object to its being a pretext or offer any proof that it was a pretest or a sham.
On appeal, Parris argues that this reason was a mere pretext and that prosecutor's strike of the juror was racially motivated. Parris never made this argument at trial and, in fact, did not make any other statement after the prosecution offered its reason for striking the juror. Because Parris did not first challenge the prosecution's reason as a pretext at trial, he has not preserved his argument for appellate review. See Brown v. State, 705 So.2d 871 (Ala.Crim.App.1997). See also Covington v. State, 620 So.2d 122, 127 (Ala.Crim.App.1993) ("`An objection, of course, should fairly and specifically point out the particular grounds on which an alleged error occurred in order to inform the trial judge of the legal basis of the objection, thereby affording the trial judge an opportunity to reevaluate his or her *839 initial ruling in light of the grounds alleged and to change it, if deemed necessary.' Ex parte Webb, 586 So.2d 954, 957 (Ala.1991).") (quoted in Brown v. State, supra).
Moreover, this argument is without merit. Parris did not offer at trial, and he has not offered on appeal, any reason or fact or theory upon which he bases his bare assertion that the prosecutor's reason for striking the juror was a mere pretext.
"In Batson, the United States Supreme Court held that the prosecution violates equal protection when it peremptorily strikes `potential jurors [from the venire] solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.' 476 U.S. at 89, 106 S.Ct. at 1719. After the appellant makes a timely Batson motion and establishes a prima facie showing of discrimination, the burden shifts to the state to provide a race-neutral reason for each strike of a minority veniremember. See, e.g., Ex parte Bird, 594 So.2d 676 (Ala.1991). We will reverse the circuit court's ruling on the Batson motion only if it is `clearly erroneous.' Jackson v. State, 549 So.2d 616 (Ala.Cr.App.1989)."
Cooper v. State, 611 So.2d 460, 463 (Ala.Crim.App.1992) (bracketed information original).
"Within the context of Batson, a `race-neutral' explanation `means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' `In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law.' `[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within the trial judges's province."'"
Allen v. State, 659 So.2d 135, 147 (Ala.Crim.App.1994) (citations omitted). Because the prosecutor's reason was facially valid and because Parris offered nothing to oppose that facial validity, the trial court properly denied his Batson motion.

XIII-XV.
In arguments 13-15 in Parris's brief on appeal, he argues 1) that the trial court erroneously denied him "a hearing on his motion to reconsider [his] motion for judgment of acquittal/new trial" filed nearly two months after he was sentenced, 2) that he was denied the effective assistance of counsel, and 3) that the trial court erroneously refused to grant him a new trial based on alleged juror misconduct.
We do not address these because these arguments were raised for the first time in untimely postconviction motions. See Part VIII, supra, and note 1, supra.

XVI.
Parris argues that the trial court erroneously allowed the admission of an unfired bullet found at the crime scene. Parris contends that there was no evidence linking the unfired bullet to his weapon, his car, or him. Parris made these same arguments to the trial court in his motion to suppress, and the trial court ruled adversely to him.
"It is well settled that `a determination of admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal *840 absent a clear showing of an abuse of discretion.'" State v. Mason, 675 So.2d 1, 3 (Ala.Crim.App.1993) (quoting Jennings v. State, 513 So.2d 91, 95 (Ala.Crim.App.1987)).
At trial, the State presented evidence indicating that the bullet was found on the ground in the front yard near where the victim had been shot; that, although the bullet was intact, it was the product of a gun's misfiring; that a box of bullets found in Parris's car matched the make, manufacture, and caliber of the bullet in question; that a weapon found in Parris's car used the same caliber bullet as the bullet in question; and that the bullet removed from the victim was the same caliber bullet as the bullet in question. The bullet was certainly relevant in that it had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Ala. R. Evid. That is, it was relevant to the determination of whether Parris intended to kill the victim.
As for prejudice, Parris argues that "[t]he prosecution used this testimony to argue that the Appellant's shooting of [the victim] was a deliberate act with `cooling time.'" (Appellant's brief on appeal, p. 128.) After a review of the record, the prosecutor did not refer to any "cooling time," but rather referred to the misfired bullet as an indication that Parris must have intended to kill the victim because he fired more than once.
Certainly, evidence that tends to establish the requisite intent of a crime is prejudicial by its very nature. However, such prejudice is not the sort of "unfair prejudice" that can substantially outweigh the probative value of such evidence, and its admission is certainly not grounds for reversal. Rule 403, Ala. R. Evid. See Ex parte Vincent, 770 So.2d 92, 96 (Ala.1999) ("`Unfair prejudice' under Rule 403 has been defined as something more than simple damage to an opponent's case. Dealto v. State, 677 So.2d 1236 (Ala.Crim.App.1995). A litigant's case is always damaged by evidence that is contrary to his or her contention, but damage caused in that manner does not rise to the level of `unfair prejudice' and cannot alone be cause for exclusion. Jackson v. State, 674 So.2d 1318 (Ala.Crim.App.1993), reversed in part on other grounds, 674 So.2d 1365 (Ala.1994).") Therefore, Parris's argument is without merit.
To the extent that Parris takes issue with the testimony of a police officer in regard to the bullet bearing the marks of a misfire, we find this argument also to be without merit. Parris contends, as he did at trial, that the police officer did not have the requisite expertise to testify regarding firearms. Assuming, without deciding, that this assertion is true, we find no error in the admission of the officer's testimony.
"`[A]ny objection to an expert witness on the ground that he or she lacks knowledge goes to the weight rather than to the admissibility of his or her testimony.'" Holland v. State, 666 So.2d 547, 548 (Ala.Crim.App.1995) (quoting Smoot v. State, 520 So.2d 182, 189 (Ala.Crim.App.1987)). Whether a witness will be allowed to testify as an expert is largely discretionary and the trial court's decision will not be disturbed" `except for palpable abuse.'" Holland, 666 So.2d at 549 (quoting Sharp v. Argo-Collier Truck Lines Corps., 356 So.2d 147, 149 (Ala.1978)).
Because Parris's objection went to the weight of the testimony, rather than the admissibility, his argument that the trial court erroneously allowed the admission of such testimony is therefore without merit.

*841 XVII.
Finally, Parris argues that the trial court failed to swear the petit jury pursuant to Rule 18.5, Ala. R.Crim. P. While this alone would not constitute reversible error, the trial court's failure to swear both the jury venire and the petit jury would constitute a jurisdictional defect that would result in reversal. See Brooks v. State, 845 So.2d 849 (Ala.Crim.App.2002).
In addressing Parris's argument, we noticed that not only is the record silent as to whether the petit jury was sworn, but it is also silent as to whether the jury venire was sworn. We cannot accept the silent record as evidence that the jury was properly sworn. Ex parte Deramus, 721 So.2d 242 (Ala.1998).
Therefore, we remand this cause to the circuit court for that court to make the findings necessary to determine whether the jury venire or the petit jury was given the oath required by Rules 12.1(c) and 18.5, Ala. R.Crim. P. See generally Harris v. State, 805 So.2d 777 (Ala.Crim.App.2001). The trial court shall ensure that the circuit clerk makes due return to this Court within 14 days of the release of this opinion.
REMANDED WITH DIRECTIONS.[*]
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
NOTES
[1] The entry on the case action summary dated February 27, 1998, states, "Cont'd. Def't. [Circuit Judge]." Parris has maintained from his first motion for a speedy trial that he requested only one continuanceon November 14, 1997. We discuss this particular delay below.
[2] Although not noted on the case action summary sheet, the trial court evidently continued the trial from its scheduled commencement during the week of May 18, 1998.
[3] We presume that this continuance was at the request of the State. However, there is no indication on the case action summary sheet that the trial court specifically granted the State's motion to continue.
[1] Parris subsequently filed three additional postconviction motions after he had already filed his notice of appeal. On November 22, 2000, Parris filed an amended motion for a new trial. On December 1, 2000, Parris filed a motion to reconsider his first motion for a new trial/judgment of acquittal and his amended motion for a new trial. On December 21, 2000, Parris filed a motion for reconsideration of his multiple postconviction motions.
[2] Apparently, the trial courts gave priority to those cases in which defendants were incarcerated in the overcrowded county jail ("jail case"), as opposed to those cases where the defendants were incarcerated in a less crowded prison ("prison case").

We recognize the following proposition of law:
"An accused's right to [a] speedy trial remains undiminished even when he is already serving a prison sentence. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Byrd v. Martin, 754 F.2d 963 (11th Cir.1985); Smith v. State, 409 So.2d 958 (Ala.Cr.App.1981).
"`At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.
"`And while it might be argued that a person already in prison would be less likely than others to be affected by "anxiety and concern accompanying public accusation," there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. Cf. Klopfer v. North Carolina, supra, 386 U.S. [213] at 221-222, 87 S.Ct. [988] at 992-993 [18 L.Ed.2d 1 (1967)]."
Aaron v. State, 497 So.2d 603, 604 (Ala.Crim.App.1986).
Therefore, we are careful to point out that a defendant's custody status does not necessarily serve as a neutral justification for depriving him of his right to a speedy trial. However, because we agree with the trial court's assessment that Parris suffered from minimal prejudice, we decline to address the potential pitfalls of Etowah County's docket system.
[3] To the extent that Parris also appears to be challenging in his brief on appeal the weight of the evidence, we note that he did not advance this argument to the trial court in a timely postconviction motion. Therefore, he has not preserved it for appellate review. See Zumbado v. State, 615 So.2d 1223 (Ala.Crim.App.1993).
[4] Requested jury instruction 14 read as follows:

"Defendant requests an instruction to the jury on attempted assault in the first degree (13A-6-20, 13A-4-2) and attempted assault in the second degree (13A-6-21, 13A-4-2) and attempted assault in the third degree (13A-6-22, 13A-4-2) as a lesser included offense to the crime (attempted murder) charged."
(C. 228.)
[5] This objection apparently was redundant; trial counsel had already argued that the trial court should have instructed on second- and third-degree assault when he argued that it should have given jury instruction 14. See note 4, supra.
[6] Serious physical injury is defined as "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ." § 13A-1-2(14), Ala.Code 1975.
[7] Parris also argues that he was denied counsel at his arraignment hearing. Apparently, the arraignment was continued until the time of trial, at which time Parris had counsel. However, an arraignment hearing did not take place. As far as we can tell from the record, because there was never an arraignment hearing, Parris was never in a position to be denied counsel at arraignment; therefore, this argument is without merit.
[8] On December 21, 2000, this Court issued an order stating in part that "the trial court never had jurisdiction to act on the amended motion for new trial since it was filed more than 30 days from the date the appellant was sentenced and because the original motion was not pending at the time the amended motion was filed." (C. 673.)
[9] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[10] Some of the text of the articles is difficult, if not impossible, to read because the pertinent portions of the articles were "highlighted," and the "highlighted" portions turned black when photocopied.
[11] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[*] Note from the reporter of decisions: On January 24, 2003, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On March 21, 2003, that court modified its November 22, 2002, opinion and denied rehearing. On February 13, 2004, the Supreme Court quashed the certiorari petition, without opinion (1021093).