PER CURIAM.
 

 The State appeals from the trial court’s order dismissing the indictment charging Gedarin Kenardo Robinson with second-degree forgery for allegedly obtaining a non-driver’s identification card in his brother’s name.
 

 The State argues that the trial court erroneously granted Robinson’s motion to dismiss the indictment against him on speedy-trial grounds. In
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court set forth the following factors that must be weighed when reviewing a speedy-trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the accused’s assertion of his right to a speedy trial; and (4) the degree of prejudice the accused suffered due to the delay.
 
 See also Ex parte Walker,
 
 928 So.2d 259 (Ala.2005) (providing a lengthy analysis as to the proper application of those factors in Alabama).
 

 The following time line is helpful for our examination of the issue in this case:
 

 January 15, 2004 — Robinson allegedly obtained an Alabama non-driver identification card in the name of Eric Delano Robinson by forging the name “Eric Robinson” on documents required to obtain the identification card.
 

 April 18, 2008 — An arrest warrant was issued in Montgomery County seeking Robinson’s arrest for the January 14, 2004, offense.
 

 June 5, 2008 — Robinson filed an appearance bond in Elmore Circuit Court regarding burglary charges in Elmore County.
 

 August 21, 2008 — Robinson was indicted in Montgomery County for second-degree forgery for the January 14, 2004, offense.
 

 May 12, 2010 — Robinson was arrested in Montgomery County for the January 14, 2004, offense.
 

 June 8, 2010 — Robinson filed a “Motion to Dismiss for Failure to Provide a Speedy Trial.” A hearing was set for June 29, 2010.
 

 June 24, 2010 — The State filed a motion to continue the speedy-trial hearing scheduled for June 29, 2010, because its
 
 *689
 
 key witness would be out of town until July 2, 2010. The hearing was rescheduled for July 7, 2010.
 

 July 14, 2010 — The trial court conducted a hearing on Robinson’s motion to dismiss.
 

 July 21, 2010 — The trial court dismissed the indictment against Robinson.
 

 During the hearing on the motion to dismiss, Diana Hough testified that she is employed by the Montgomery County Sheriffs Department as a fingerprint classifier and as the assistant to the identification officer, Ron McCoy. She further testified that she had reviewed the records regarding Robinson’s forgery charge and that she was the custodian of those records. According to Hough, the original arrest warrant was issued April 18, 2008; that warrant was replaced by a grand-jury indictment on August 21, 2008. She stated that the only address the department had for Robinson was a North Carolina address, so his information was entered into The National Crime Information Center (“the NCIC”) on December 17, 2008; Hough testified that the NCIC system periodically required the department to confirm that the warrant was still valid and that her records reflected that the department verified the continued validity of the warrant on January 21, 2009, on April 16, 2009, and on March 25, 2010.
 

 Hough stated that in preparation for the present proceedings, the sheriffs department ran a criminal history to review Robinson’s contact with law enforcement. According to Hough, that history revealed that Robinson had been arrested in El-more County on June 5, 2008; she stated that the records indicated that Robinson was booked in Elmore County under the name Kenardo Robinson, and that records in Montgomery County listed him as Geda-rin Robinson. Hough further indicated that the records indicated that Robinson was arrested in North Carolina on April 4, 2010, and then by Montgomery County authorities on May 11, 2010, for the forgery charge.
 

 On cross-examination, Hough indicated that she did not have any knowledge of the procedures used in Elmore County, that she did not have an explanation for the variations of Robinson’s name between the entries in the Elmore County records and the Montgomery County records, and that she did not know the disposition of the Elmore County charges or whether Robinson came to Montgomery County before going to Elmore County to face the El-more County charges.
 

 Robinson also testified at the hearing on his motion to dismiss. Defense counsel asked Robinson about the Elmore County charges, and the following exchange occurred:
 

 “[Robinson]: Well, initially, I was arrested in North Carolina on a fugitive warrant. All they said was Alabama wanted me. So I came — I didn’t know what county wanted me. I came to Montgomery first and then they told me Elmore County wanted me, so— “[Defense counsel]: Where did you go in Montgomery?
 

 “[Robinson]: Here to the jail.
 

 “[Defense counsel]: Came to the jail?
 

 “[Robinson]: Yes, sir.
 

 “[Defense counsel]: Did you identify yourself?
 

 “[Robinson]: Yes.
 

 “[Defense counsel]: All right. And how did you identify yourself?
 

 “[Robinson]: With my name, Gedarin Kenardo Robinson.
 

 “[Defense counsel]: All right. What is your full name?
 

 “[Robinson]: Gedarin Kenardo Robinson.
 

 
 *690
 
 “[Defense counsel]: All right. So Ken-ardo is your middle name?
 

 “[Robinson]: Correct.
 

 “[Defense counsel]: All right. And was there any attempt to serve you with any papers or to arrest you on a Montgomery warrant at that time?
 

 “[Robinson]: No.”
 

 (R. 12-13.) According to Robinson, he pleaded guilty in Elmore County to misdemeanor possession of a forged instrument to resolve those charges. Robinson indicated that he had been unaware of the charge against him in Montgomery County and that he was not aware of any attempts to serve him with any papers or to arrest him on the Montgomery charge.
 

 On cross-examination, the prosecutor questioned Robinson as to why he came to Montgomery County to check on cases when he claimed that he was unaware of any cases against him in Montgomery. Robinson responded:
 

 “I was arrested in North Carolina on a fugitive warrant out of the state of Alabama. I knew I lived in Montgomery before. So they had a hold on me, and — but they gave me bail in North Carolina on the condition that I came down here to straighten out what was going on. So once I got out of North Carolina, I came here to Montgomery County jail to turn myself in, but they told me the warrants were Elmore County. So once I went to Elmore County, I turned myself in there, and then used a property bond for property we have in here Montgomery to bail me out in Elmore County.”
 

 (R. 14-15.) Robinson further indicated that he came to Montgomery County on the same day he was arrested in Elmore County.
 

 The trial court inquired of the prosecutor as to why Robinson had not been indicted until approximately four years after the commission of the offense, and the prosecutor engaged in a dialogue with the trial court regarding the continuing nature of the offense. The trial court also asked Robinson if he lived in North Carolina, to which Robinson responded affirmatively.
 

 The prosecutor noted that Robinson had not asserted his right to a speedy trial until recently, and that he had not shown any prejudice caused by the delay. The trial court asked defense counsel how Robinson had been prejudiced, to which defense counsel stated that the allegation was that Robinson had obtained the identification card in his brother’s name, and that the defense viewed the brother as a possible witness but the brother was no longer subject to the subpoena power of the court because he did not live in Alabama and, according to defense counsel’s understanding, was presently non compos mentis.
 

 The trial court took the matter under advisement, and the hearing was concluded. Later that same day, defense counsel submitted to the trial court a copy of the United States Supreme Court opinion in
 
 Doggett v. United States,
 
 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).
 
 [1]
 
 The case-action summary contains the following entry dated July 21, 2010: “Order Grant Mo To Dismiss.” (C. 3.) The record also contains a copy of Robinson’s motion to dismiss for failure to provide a speedy trial, with what appears to be a stamp indicating that the motion was granted and bearing a line for the date and the trial judge’s name; the corresponding
 
 *691
 
 lines in the stamped area contain handwritten notations of “7-21-10,” “case dismissed,” and the trial judge’s signature. (C. 30.)
 

 The record does not affirmatively indicate that the trial court weighed each of the factors as required by
 
 Barker,
 
 supra.
 
 See also Ex parte Walker,
 
 supra. Therefore, we remand this case for the trial court to make specific, written findings of fact as to each
 
 Barker
 
 factor with reference to the principles set forth by the Alabama Supreme Court in
 
 Ex parte Walker,
 
 supra. See generally
 
 Parris v. State,
 
 885 So.2d 813 (Ala.Crim.App.2001). If the trial court determines that it needs to conduct an additional hearing to take additional evidence or to hear additional arguments, it may do so. On remand, the trial court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 35 days after the release of this opinion. The return to remand shall include the trial court’s specific, written findings of fact; a transcript of any additional hearing; and copies of any additional documents or evidence that may be submitted to the trial court.
 

 REMANDED WITH INSTRUCTIONS.
 

 WELCH, P.J., and WINDOM and KELLUM, JJ., concur.
 

 On Return to Remand
 

 JOINER, Judge.
 

 The State of Alabama appeals from the circuit court’s pretrial order granting Ge-darin Kenardo Robinson’s motion to dismiss the charges against him based on the State’s failure to provide a speedy trial. We reverse and remand.
 

 Facts and Procedural History
 

 Robinson was charged with second-degree forgery in violation of § 13A-9-3, Ala.Code 1975. After conducting a hearing on Robinson’s motion to dismiss, the circuit court granted Robinson’s motion, and the State appealed. This Court remanded the case to the circuit court for it to provide written findings of fact as to the factors announced in
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), that must be weighed when evaluating a speedy-trial claim.
 
 State v. Robinson,
 
 79 So.3d 686 (Ala.Crim.App.2011).
 

 This Court’s previous opinion remanding the case set forth the following time line of events and statement of facts relevant to this appeal.
 

 “January 15, 2004 — Robinson allegedly obtained an Alabama non-driver identification card in the name of Eric Delano Robinson by forging the name ‘Eric Robinson’ on documents required to obtain the identification card.
 

 “April 18, 2008 — An arrest warrant was issued in Montgomery County seeking Robinson’s arrest for the January 14, 2004, offense.
 

 “June 5, 2008 — Robinson filed an appearance bond in Elmore Circuit Court regarding burglary charges in Elmore County.
 

 “August 21, 2008 — -Robinson was indicted in Montgomery County for second-degree forgery for the January 14, 2004, offense.
 

 “May 12, 2010 — Robinson was arrested in Montgomery County for the January 14, 2004, offense.
 

 “June 8, 2010 — Robinson filed a ‘Motion to Dismiss for Failure to Provide a Speedy Trial.’ A hearing was set for June 29, 2010.
 

 “June 24, 2010 — -The State filed a motion to continue the speedy-trial hearing scheduled for June 29, 2010, because its key witness would be out of
 
 *692
 
 town until July 2, 2010. The hearing was rescheduled for July 7, 2010.
 

 “July 14, 2010 — The trial court conducted a hearing on Robinson’s motion to dismiss.
 

 “July 21, 2010 — The trial court dismissed the indictment against Robinson.
 

 “During the hearing on the motion to dismiss, Diana Hough testified that she is employed by the Montgomery County Sheriffs Department as a fingerprint classifier and as the assistant to the identification officer, Ron McCoy. She further testified that she had reviewed the records regarding Robinson’s forgery charge and that she was the custodian of those records. According to Hough, the original arrest warrant was issued April 18, 2008; that warrant was replaced by a grand-jury indictment on August 21, 2008. She stated that the only address the department had for Robinson was a North Carolina address, so his information was entered into The National Crime Information Center (‘the NCIC’) on December 17, 2008; Hough testified that the NCIC system periodically required the department to confirm that the warrant was still valid and that her records reflected that the department verified the continued validity of the warrant on January 21, 2009, on April 16, 2009, and on March 25, 2010.
 

 “Hough stated that in preparation for the present proceedings, the sheriffs department ran a criminal history to review Robinson’s contact with law enforcement. According to Hough, that history revealed that Robinson had been arrested in Elmore County on June 5, 2008; she stated that the records indicated that Robinson was booked in El-more County under the name Kenardo Robinson, and that records in Montgomery County listed him as Gedarin Robinson. Hough further indicated that the records indicated that Robinson was arrested in North Carolina on April 4, 2010, and then by Montgomery County authorities on May 11, 2010, for the forgery charge.
 

 “On cross-examination, Hough indicated that she did not have any knowledge of the procedures used in Elmore County, that she did not have an explanation for the variations of Robinson’s name between the entries in the Elmore County records and the Montgomery County records, and that she did not know the disposition of the Elmore County charges or whether Robinson came to Montgomery County before going to El-more County to face the Elmore County charges.
 

 “Robinson also testified at the hearing on his motion to dismiss. Defense counsel asked Robinson about the Elmore County charges, and the following exchange occurred:
 

 “ ‘[Robinson]: Well, initially, I was arrested in North Carolina on a fugitive warrant. All they said was Alabama wanted me. So I came — I didn’t know what county wanted me. I came to Montgomery first and then they told me Elmore County wanted me, so—
 

 “ ‘[Defense counsel]: Where did you go in Montgomery?
 

 “ ‘[Robinson]: Here to the jail.
 

 “ ‘[Defense counsel]: Came to the jail?
 

 “ ‘[Robinson]: Yes, sir.
 

 “ ‘[Defense counsel]: Did you identify yourself?
 

 “ ‘[Robinson]: Yes.
 

 “ ‘[Defense counsel]: All right. And how did you identify yourself?
 

 “ ‘[Robinson]: With my name, Gedarin Kenardo Robinson.
 

 
 *693
 
 “ '[Defense counsel]: All right. What is your full name?
 

 “ ‘[Robinson]: Gedarin Kenardo Robinson.
 

 “ ‘[Defense counsel]: All right. So Kenardo is your middle name?
 

 “ ‘[Robinson]: Correct.
 

 “‘[Defense counsel]: All right. And was there any attempt to serve you with any papers or to arrest you on a Montgomery warrant at that time?
 

 “‘[Robinson]: No.’
 

 “(R. 12-13.) According to Robinson, he pleaded guilty in Elmore County to misdemeanor possession of a forged instrument to resolve those charges. Robinson indicated that he had been unaware of the charge against him in Montgomery County and that he was not aware of any attempts to serve him with any papers or to arrest him on the Montgomery charge.
 

 “On cross-examination, the prosecutor questioned Robinson as to why he came to Montgomery County to check on cases when he claimed that he was unaware of any cases against him in Montgomery. Robinson responded:
 

 “ ‘I was arrested in North Carolina on a fugitive warrant out of the state of Alabama. I knew I lived in Montgomery before. So they had a hold on me, and — but they gave me bail in North Carolina on the condition that I came down here to straighten out what was going on. So once I got out of North Carolina, I came here to Montgomery County jail to turn myself in, but they told me the warrants were Elmore County. So once I went to Elmore County, I turned myself in there, and then used a property bond for property we have in here Montgomery to bail me out in Elmore County.’
 

 “(R. 14-15.) Robinson further indicated that he came to Montgomery County on the same day he was arrested in Elmore County.
 

 “The trial court inquired of the prosecutor as to why Robinson had not been indicted until approximately four years after the commission of the offense, and the prosecutor engaged in a dialogue with the trial court regarding the continuing nature of the offense. The trial court also asked Robinson if he lived in North Carolina, to which Robinson responded affirmatively.
 

 “The prosecutor noted that Robinson had not asserted his right to a speedy trial until recently, and that he had not shown any prejudice caused by the delay. The trial court asked defense counsel how Robinson had been prejudiced, to which defense counsel stated that the allegation was that Robinson had obtained the identification card in his brother’s name, and that the defense viewed the brother as a possible witness but the brother was no longer subject to the subpoena power of the court because he did not live in Alabama and, according to defense counsel’s understanding, was presently non compos mentis.”
 

 Robinson,
 
 79 So.3d at 688-90.
 

 On remand, the circuit court held a second hearing. At that hearing, Diana Hough again testified as a fingerprint officer and assistant to the identification officer at the Montgomery County Sheriffs Department. During the hearing, Robinson’s defense counsel presented Hough with a copy of the August 2008 indictment issued against Robinson listing his address as-Pelham Street in Montgomery. (C. 4.) Hough stated that she did not know why the Montgomery address was not placed in the National Crime Information Center (“the NCIC”) database but stated that the identification office possessed only Robinson’s North Carolina ad
 
 *694
 
 dress and that the North Carolina address was received from the warrant department. Hough said that she did not know where the warrant department got the North Carolina address. Hough testified that no attempt was made to serve Robinson with his arrest warrant or indictment in Alabama because her office knew of only his North Carolina address and that Robinson was entered into the NCIC database as standard procedure to locate an out-of-state suspect.
 

 Hough again testified that Robinson’s arrest record in Elmore County listed him as “Kenardo Gedarin Robinson” instead of his correct name “Gedarin Kenardo Robinson” as listed in the Montgomery County Sheriff Department’s records. Hough stated that, if Robinson were arrested outside of Montgomeiy County but gave authorities a different name, date of birth, and Social Security number, his arrest would not show up in the sheriff department’s computer records.
 

 Hough stated that Robinson’s “criminal histories” showed both his name, date of birth, and Social Security number and his brother Eric Robinson’s name, date of birth, and Social Security number. These documents are not included in the record, however, and it is unclear why Eric Robinson’s name was listed on Robinson’s criminal-history record. Hough clarified that the only difference between Robinson’s arrest record in Montgomery County and his arrest record in Elmore County was the inverted listing of Robinson’s first and middle names.
 

 After the close of testimony, Robinson submitted an affidavit stating that his brother Eric Robinson lives out-of-state and is currently non compos mentis.
 

 The circuit court subsequently issued a written order containing its findings with regard to the
 
 Barker
 
 factors and again granting Robinson’s motion to dismiss. The circuit court found as follows:
 

 “1.
 
 The length of the delay:
 
 The arrest warrant against [Robinson] was dated April 17, 2008. The date of the hearing on [Robinson’s] Motion To Dismiss For Failui’e To Provide A Speedy Tidal was July 14, 2010, which was twenty-seven (27) months after [Robinson’s] arrest without [Robinson’s] having been put to trial. Such a delay is presumptively prejudicial.
 
 Mansel v. State,
 
 716 So.2d 234 (Ala.Cr.App.1997).
 

 “2.
 
 The reason for the delay:
 
 There was never a good and sufficient reason given by the State for the delay in bringing [Robinson] to trial. At the hearing on July 14, 2010, Officer Hough testified that the only address that the Sheriffs Office had for [Robinson] was a North Carolina address. However, at the hearing on March 7, 2011, it was proven that the indictment contained a-Pelham Street, Montgomexy, Alabama address for [Robinson] — not a North Carolina address. Considei'ing that the date of the alleged offense was Januaiy 4, 2004, it is not known exactly where [Robinson] resided on the date that he was indicted, but suffice it to say that no attempt was made to serve either the airest warrant or the indictment on [Robinson]
 
 at any time.
 
 In fact, the testimony was that between April 18, 2008, and December 2008, a span of eight (8) months, the Sheriffs Office did not even enter into NCIC that there was a charge against [Robinson]. Officer Hough testified at the initial hearing that she had run a criminal history on [Robinson] and found that a Kenardo Robinson had been arrested in Elmore County on June 5, 2008, but no connection was made between Kenardo Robinson and Gedarin Kenardo Robinson. However, at the heai'ing on March 7, 2011, the testimony, and the documen
 
 *695
 
 tary evidence, proved that [Robinson] made an appearance bond in Elmore County in 2008 under his correct legal name, viz. Gedarin Kenardo Robinson. Thus, Officer Hough was simply mistaken when she stated otherwise at the initial hearing, and when she so testified on March 7, 2011. Further, the testimony was abundantly clear and uncontra-dicted that [Robinson] had personally come to the Montgomery County Jail in 2008 to inquire as to whether there was a warrant outstanding against him, and he had been told that there was none. This, of course, was another mistake on the part of the Sheriffs Department, as there clearly was, according to Officer Hough, a warrant outstanding against [Robinson] in Montgomery County at that time, but the Sheriffs Office failed to act on it. [Robinson] even posted a property bond through the Montgomery County Sheriffs Department on the El-more County charges, without the Sheriffs Department making any connection between the two individuals, and not making any inquiry into the matter. Hence, it is the Court’s opinion that there was never a good and sufficient reason for the delay that has been occasioned in this case.
 

 “3.
 
 [Robinson’s] assertion of his right to a speedy trial:
 
 [Robinson] asserted his right to a speedy trial by way of a Motion to Dismiss within three (3) weeks after being arrested on the Montgomery charge. This is not a case where it would have been of benefit to [Robinson] to file a demand for a speedy trial, as there had already been a twenty-seven (27) month delay between the issuing of the arrest warrant and a trial date.
 

 “4.
 
 Prejudice to [Robinson]:
 
 [Robinson] can hardly be expected to compile favorable evidence to prepare his defense in 2011 with regard to an offense that allegedly occurred in 2004 and for which an arrest warrant was issued on April 17, 2008. [Robinson], through his attorney, presented an Affidavit on March 7, 2011, stating that he would expect his brother to be a material witness. The charge against [Robinson] is that in January 2004 he forged his brother’s signature in order to obtain a non-driver’s license ID in the State of Alabama. [Robinson’s] Affidavit indicates that his brother, Eric Robinson, is at the present time non compos mentis and no longer residing in the State of Alabama; rather, he resides in the State of North Carolina, which would make it difficult for him to be subpoenaed to Court, even if he were competent to testify. Further to be considered is the fact that there is a real possibility that [Robinson’s] defense would be impaired by dim memories and loss of exculpatory evidence with regard to an offense that allegedly occurred in 2004. In any event, the uncontradicted Affidavit gives rise to the conclusion that [Robinson’s] brother would.be incompetent to testify as to whether he applied for a non-driver’s license I.D. on the date that his brother, the defendant herein, is alleged to have done so.”
 

 (RTR, C. 6-8.)
 

 Standard of Review
 

 On appeal, the State does not dispute the circuit court’s factual findings. Rather, the State challenges the circuit court’s legal conclusions based on those facts. Our review, therefore, is de novo.
 
 Ex parte Walker,
 
 928 So.2d 259, 262-63 (Ala.2005).
 

 Discussion
 

 In
 
 Ex parte Walker,
 
 the Alabama Supreme Court described the right to a speedy trial as follows:
 

 
 *696
 
 “An accused’s right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Art. I, § 6, of the Alabama Constitution, 1901. As noted, an evaluation of an accused’s speedy-trial claim requires us to balance the four factors the United States Supreme Court set forth in
 
 Barker:
 
 ‘[ljength of delay, the reason for the delay, the defendant’s assertion of [her] right, and prejudice to the defendant.’ 407 U.S. at 530, 92 S.Ct. 2182 (footnote omitted).
 
 See also Ex parte Carrell,
 
 565 So.2d [104,] at 105 [ (Ala.1990) ]. ‘A single factor is not necessarily determinative, because this is a “balancing test, in which the conduct of both the prosecution and the defense are weighed.” ’
 
 Ex parte Clopton,
 
 656 So.2d [1243,] at 1245 [ (Ala.1995) ] (quoting
 
 Barker,
 
 407 U.S. at 530, 92 S.Ct. 2182).”
 

 928 So.2d at 263. We thus evaluate the four
 
 Barker
 
 factors in turn.
 

 A. Length of the Delay
 

 “In
 
 Doggett v. United States,
 
 the United States Supreme Court explained that the first factor — length of delay — ‘is actually a double enquiry.’ 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The first inquiry under this factor is whether the length of the delay is ' “presumptively prejudicial.”’ 505 U.S. at 652, 112 S.Ct. 2686 (quoting
 
 Barker,
 
 407 U.S. at 530-31, 92 S.Ct. 2182). A finding that the length of delay is presumptively prejudicial ‘triggers’ an examination of the remaining three
 
 Barker
 
 factors. 505 U.S. at 652 n. 1, 112 S.Ct. 2686 (‘[A]s the term is used in this threshold context, “presumptive prejudice” does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the
 
 Barker
 
 enquiry.’).
 
 See also Roberson v. State,
 
 864 So.2d 379, 394 (Ala.Crim.App.2002).
 

 “In Alabama, ‘[t]he length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant — whichever is earlier — to the date of the trial.’
 
 Roberson,
 
 864 So.2d at 394.
 
 Cf
 
 § 15-3-7, Ala.Code 1975 (‘A prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of a warrant or by binding over the offender.’); Rule 2.1, Ala. R.Crim. P. (‘All criminal proceedings shall be commenced either by indictment or by complaint.’).”
 

 Walker,
 
 928 So.2d at 263-64.
 

 In the present case, the length of the delay between the issuance of Robinson’s arrest warrant and the hearing on his pretrial motion to dismiss
 
 [1]
 
 was 27 months.
 
 [2]
 
 The State concedes that this length of delay is presumptively prejudicial.
 
 Ex parte Anderson,
 
 979 So.2d 777, 780 (Ala.2007) (citing
 
 Mansel v. State,
 
 716 So.2d 234, 236 (Ala.Crim.App.1997)). We must therefore examine the three remaining
 
 Barker
 
 factors.
 

 B. Reason for Delay
 

 “The State has the burden of justifying the delay.
 
 See Barker,
 
 407 U.S. at 531, 92 S.Ct. 2182;
 
 Steeley v. City of Gadsden,
 
 533 So.2d 671, 680 (Ala.Crim.App.1988).
 
 Barker
 
 recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay. 407 U.S. at 531,
 
 *697
 
 92 S.Ct. 2182. Courts assign different weight to different reasons for delay. Deliberate delay is ‘weighted heavily’ against the State. 407 U.S. at 531, 92 S.Ct. 2182. Deliberate delay includes an ‘attempt to delay the trial in order to hamper the defense’ or ‘ “to gain some tactical advantage over (defendants) or to harass them.” ’ 407 U.S. at 531 & n. 32, 92 S.Ct. 2182 (quoting
 
 United States v. Marion,
 
 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). Negligent delay is weighted less heavily against the State than is deliberate delay.
 
 Barker,
 
 407 U.S. at 531, 92 S.Ct. 2182;
 
 Ex parte Carrell,
 
 565 So.2d at 108. Justified delay — which includes such occurrences as missing witnesses or delay for which the defendant is primarily responsible — is not weighted against the State.
 
 Barker,
 
 407 U.S. at 531, 92 S.Ct. 2182;
 
 Zumbado v. State,
 
 615 So.2d 1223, 1234 (Ala.Crim.App.1993) (‘ “Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of
 
 Barker.”
 
 ’) (quoting
 
 McCallum v. State,
 
 407 So.2d 865, 868 (Ala.Crim.App.1981)).”
 

 Walker,
 
 928 So.2d at 265.
 

 The findings of fact in the circuit court’s order demonstrate that the State was negligent in failing to bring Robinson to trial sooner. “There was never a good and sufficient reason given by the State for delay in bringing [Robinson] to trial.” (RTR, C. 6.) Contrary to Robinson’s bare assertion in his brief, however, there is no evidence indicating that the State was purposeful or deliberate in bringing about the delay, nor did the circuit court make this finding. “Thus, the second
 
 Barker
 
 factor weighs against the State, but the precise weight of the State’s negligence and its effect on the prejudice to [Robinson] is addressed in our analysis of the fourth
 
 Barker
 
 factor.”
 
 Walker,
 
 928 So.2d at 265.
 

 C. Robinson’s Assertion of His Right to a Speedy Trial
 

 “An accused does not waive the right to a speedy trial simply by failing to assert it.
 
 Barker,
 
 407 U.S. at 528, 92 S.Ct. 2182. Even so, courts applying the
 
 Barker
 
 factors are to consider in the weighing process whether and when the accused asserts the right to a speedy trial, 407 U.S. at 528-29, 92 S.Ct. 2182, and not every assertion of the right to a speedy trial is weighted equally.
 
 Compare Kelley v. State,
 
 568 So.2d 405, 410 (Ala.Crim.App.1990) (‘Repeated requests for a speedy trial weigh heavily in favor of an accused.’),
 
 with Clancy v. State,
 
 886 So.2d 166, 172 (Ala.Crim.App.2003) (weighting third factor against an accused who asserted his right to a speedy trial two weeks before trial, and stating: “‘The fact that the appellant did not assert his right to a speedy trial sooner ‘tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date.’ ” ’) (quoting
 
 Benefield v. State,
 
 726 So.2d 286, 291 (Ala.Crim.App.1997), additional citations omitted), and
 
 Brown v. State,
 
 392 So.2d 1248, 1254 (Ala.Crim.App.1980) (no speedy-trial violation where defendant asserted his right to a speedy trial three days before trial).
 

 “... [I]n a case involving delay caused by negligence on the part of the state, the third factor usually will weigh more heavily in the accused’s favor when there is affirmative proof of the accused’s ignorance of the charges against her during the delay.
 
 See Doggett,
 
 505
 
 *698
 
 U.S. at 653-54, 112 S.Ct. 2686;
 
 Clopton,
 
 656 So.2d at 1244.”
 

 Walker,
 
 928 So.2d at 265-66.
 

 In the present case, Robinson asserted his right to a speedy trial three weeks after his arrest. Additionally, the evidence and the circuit court’s findings of fact tend to show that before his arrest Robinson was not aware of the charges against him because he had not been previously served with a warrant or indictment. After being arrested on a fugitive warrant in North Carolina, Robinson even attempted to turn himself in at the Montgomery County jail but was told that, as a result of the negligence of the State, the only outstanding Alabama warrant against him was in Elmore County. Accordingly, the third
 
 Barker
 
 factor weighs in Robinson’s favor. The precise weight to be afforded Robinson’s assertion of his right to a speedy trial depends on what prejudice he can show under the fourth
 
 Barker
 
 factor.
 

 D. Prejudice to Robinson
 

 “Because ‘pretrial delay is often both inevitable and wholly justifiable,’
 
 Doggett [v. United States],
 
 505 U.S. [647,] at 656, 112 S.Ct. 2686 [ (1992) ], the fourth
 
 Barker
 
 factor examines whether and to what extent the delay has prejudiced the defendant.
 
 Barker,
 
 407 U.S. at 532, 92 S.Ct. 2182. The United States Supreme Court has recognized three types of harm that may result from depriving a defendant of the right to a speedy trial: ‘ “oppressive pretrial incarceration,” “anxiety and concern of the accused,” and “the possibility that the [accused’s] defense will be impaired” by dimming memories and loss of exculpatory evidence.’
 
 Doggett,
 
 505 U.S. at 654, 112 S.Ct. 2686 (quoting
 
 Barker,
 
 407 U.S. at 532, 92 S.Ct. 2182, and citing
 
 Smith v. Hooey,
 
 393 U.S. 374, 377-79, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969);
 
 United States v. Ewell,
 
 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). ‘Of these forms of prejudice, “the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.” ’ 505 U.S. at 654, 112 S.Ct. 2686 (quoting
 
 Barker,
 
 407 U.S. at 532, 92 S.Ct. 2182).
 

 “Of course, no single
 
 Barker
 
 factor is determinative.
 
 Barker,
 
 407 U.S. at 533, 92 S.Ct. 2182 (‘We regard none of the four factors ... as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.’ (footnote omitted)).
 

 “The United States Supreme Court in
 
 Doggett
 
 used three hypothetical cases to demonstrate the accused’s burden under the fourth
 
 Barker
 
 factor. 505 U.S. at 656-57, 112 S.Ct. 2686.
 
 See Robinson v. Whitley,
 
 2 F.3d 562, 570 (5th Cir.1993) (discussing Doggett). The accused’s burden ‘of proof in each situation varies inversely with the [State]’s degree of culpability for the delay.’
 
 Robinson,
 
 2 F.3d at 570 (citing
 
 Doggett,
 
 505 U.S. at 656, 112 S.Ct. 2686). In the first scenario, where the state pursues the accused ‘with reasonable diligence,’ the delay— however long — generally is excused unless the accused demonstrates ‘specific prejudice to his defense.’
 
 Doggett,
 
 505 U.S. at 656, 112 S.Ct. 2686. Thus, when the state acts with reasonable diligence in bringing the defendant to trial, the defendant has the burden of proving prejudice caused by the delay.
 

 
 *699
 
 “The second situation recognized in
 
 Doggett
 
 involves bad-faith efforts by the state to delay the defendant’s trial. For example, intentional delay by the state in order ‘to gain some impermissible advantage at trial’ weighs heavily against the state, and a bad-faith delay the length of the delay in
 
 Doggett
 
 likely will ‘present an overwhelming case for dismissal.’ 505 U.S. at 656, 112 S.Ct. 2686 (citing
 
 Barker,
 
 407 U.S. at 531, 92 S.Ct. 2182). Obviously, the burden on the accused to establish prejudice in this scenario would be minimal at most, and depending on how heavily the other
 
 Barker
 
 factors weigh against the state, the fourth factor’s inquiry into prejudice could be rendered irrelevant.
 
 See Hoskins [v
 
 .
 
 Wainwright],
 
 485 F.2d [1186, 1192 (5th Cir.1973) ] (‘[Tjhere must be some point of coalescence of the other three factors in a movant’s favor, at which prejudice — either actual or presumed — becomes totally irrelevant.’);
 
 Turner [v. State],
 
 378 So.2d [1173, 1179 (Ala.Crim.App.1979) ].
 

 “The third scenario recognized in
 
 Doggett
 
 involves delay caused by the state’s ‘official negligence.’
 
 Doggett,
 
 505 U.S. at 656-57, 112 S.Ct. 2686. Official negligence ‘occupies the middle ground’ between bad-faith delay and diligent prosecution.
 
 Id.
 
 In evaluating and weighing negligent delay, the court must ‘determine what portion of the delay is attributable to the [statej’s negligence and whether this negligent delay is of such a duration that prejudice to the defendant should be presumed.’
 
 Robinson,
 
 2 F.3d at 570 (citing
 
 Doggett,
 
 505 U.S. at 656-58, 112 S.Ct. 2686). The weight assigned to negligent delay ‘increases as the length of the delay increases.’
 
 United States v. Serna-Villarreal,
 
 352 F.3d 225, 232 (5th Cir.2003) (citing
 
 Doggett,
 
 505 U.S. at 656-57, 112 S.Ct. 2686). Negligent delay may be so lengthy — or the first three
 
 Barker
 
 factors may weigh so heavily in the accused’s favor — that the accused becomes entitled to a finding of presumed prejudice. 352 F.3d at 231 (citing
 
 Robinson, 2
 
 F.3d at 570, citing in turn
 
 Doggett,
 
 505 U.S. at 655, 112 S.Ct. 2686). When prejudice is presumed, the burden shifts to the state, which must then affirmatively show either that the delay is ‘extenuated, as by the defendant’s acquiescence,’ or ‘that the delay left [the defendant’s] ability to defend himself unimpaired.’
 
 Doggett,
 
 505 U.S. at 658 & n. 4, 112 S.Ct. 2686.”
 

 Walker,
 
 928 So.2d at 266-68.
 

 In the present case, the delay in bringing Robinson to trial was brought about by the negligence of the State. Although the 27-month delay is presumptively prejudicial, this delay falls short of the length of delay necessary to relieve Robinson of his burden of proving actual prejudice under the fourth
 
 Barker
 
 factor.
 
 See Walker,
 
 928 So.2d at 264 n. 6 (explaining the difference between “presumptive prejudice” in analyzing the length of delay and “presumed prejudice” or “prima facie prejudice” in analyzing the prejudice to an accused by the delay);
 
 Walker
 
 at 269-70, 276-77 (50-month delay insufficient to presume prejudice);
 
 Pierson v. State,
 
 677 So.2d 830, 832 (Ala.Crim.App.1996) (refusing to presume prejudice after 40-month delay);
 
 State v. Van Wooten,
 
 952 So.2d 1176, 1179 (Ala.Crim.App.2006) (29-month delay insufficient absent showing of actual prejudice).
 

 Moreover, Robinson does not argue, and the circuit court did not find, that the combination of the first three
 
 Barker
 
 factors relieved Robinson of his burden of demonstrating prejudice.
 
 See Walker,
 
 928 So.2d at 276 (“[W]e do not hold today ... that any weighting of the first three factors in an accused’s favor automatically
 
 *700
 
 establishes presumed prejudice under the fourth
 
 Barker
 
 factor.”)- “[T]he precise weight afforded the delay and its effect on [Robinson] are dependent upon the prejudice to [Robinson] caused by the delay.”
 
 Van Wooten,
 
 952 So.2d at 1178. We thus review the specific findings of prejudice in the circuit court’s order.
 

 The circuit court first found that Robinson “can hardly be expected to compile favorable evidence to prepare his defense in 2011 with regard to an offense that allegedly occurred in 2004 and for which an arrest warrant was issued on April 17, 2008.” (RTR, C. 7) The circuit court further found that “there is a real possibility that [Robinson’s] defense would be impaired by dim memories and loss of exculpatory evidence with regard to an offense that allegedly occurred in 2004.” (RTR, C. 8.) The only period of delay that may be counted against the State is the 27-month period between the issuance of Robinson’s arrest warrant and the adjudication of his pretrial motion to dismiss.
 
 Walker,
 
 928 So.2d at 264. The period between the date or dates of the offense and the issuance of the arrest warrant is not relevant to a speedy-trial inquiry. Furthermore, Robinson did not argue a general loss of memories and exculpatory evidence before the circuit court or present evidence in support of this finding in the court’s order. Because the length of the delay in the present case does not give rise to presumed prejudice, we cannot simply presume that Robinson will suffer this prejudice. Moreover, “ ‘ “speculative allegations, such as general allegations of loss of witnesses and failure of memories, are insufficient to demonstrate the actual prejudice’” that an accused must establish.
 
 Haywood v. State,
 
 501 So.2d 515, 518 (Ala.Crim.App.1986) (quoting
 
 United States v. Butts,
 
 524 F.2d 975, 977 (5th Cir.1975), citing in turn
 
 United States v. McGough,
 
 510 F.2d 598, 604 (5th Cir.1975)).”
 
 Bailey v. State,
 
 67 So.3d 145 (Ala.Crim.App.2009).
 

 The circuit court next found that Robinson would be prejudiced by the difficulty of obtaining the testimony of his brother Eric Robinson, who Robinson claims lives out-of-state and is currently non compos mentis. Robinson submitted an affidavit to the circuit court stating:
 

 “My name is Gedarin Robinson and I am the Defendant in the above-captioned case. I make this Affidavit for the purpose of advising the Court that my brother, whose name is Eric Robinson, would be a material witness in this cause[;] however, at the present time he is non compos mentis and therefore not mentally capable of testifying. My brother is believed to be a material witness with regard to the charges against me, which originated in 2004, which is approximately seven (7) years ago. Further, my brother presently resides in North Carolina, and it is my understanding that this would make it very difficult for him to be subpoenaed to court, even if he were competent to testify”
 

 (RTR, Supp. C. 9.)
 

 Robinson’s affidavit contains no reference to the specific time his brother allegedly moved out-of-state or when his brother allegedly became non compos mentis. Robinson’s affidavit fails to show that his brother became unavailable to testify during the delay caused by the State or otherwise to show that the State’s failure to bring his case to trial sooner has resulted in the unavailability of his brother to testify.
 
 [3]
 

 Moreover, Robinson has failed to proffer what he would expect his brother to testify
 
 *701
 
 to if he were available or how his brother’s testimony would aid his defense. Because Robinson is alleged to have forged his brother’s name to illegally obtain an identification card, it appears that his brother would be a material witness. Robinson, however, has failed to make any showing that his brother’s testimony might materially aid his defense. Accordingly, Robinson has failed to demonstrate any prejudice from his brother’s absence.
 
 Anderson,
 
 979 So.2d at 782-83;
 
 Hobson v. State,
 
 625 So.2d 1168, 1170 (Ala.Crim.App.1993);
 
 Ingram v. State,
 
 629 So.2d 800, 803 (Ala.Crim.App.1993);
 
 Jackson v. State,
 
 650 So.2d 593, 595 (Ala.Crim.App.1994);
 
 Lawson v. State,
 
 954 So.2d 1127, 1134-35 (Ala.Crim.App.2006). Robinson has therefore failed to demonstrate any prejudice resulting from the State’s negligent delay in failing to bring him to trial sooner.
 

 Conclusion
 

 Because Robinson has failed to demonstrate that he has suffered prejudice from the State’s failure to bring him to trial sooner, our weighing of the
 
 Barker
 
 factors leads us to conclude that Robinson has not been denied his right to a speedy trial. The judgment of the circuit court is therefore reversed, and this case is remanded for the circuit court to set aside its order dismissing the indictment against Robinson and to restore his case to the active docket.
 

 REVERSED AND REMANDED.
 

 WELCH, P.J., and KELLUM and BURKE, JJ„ concur. WINDOM, J., concurs in the result.
 

 [1]
 

 . The trial court had requested a copy of the opinion during the hearing on Robinson’s motion to dismiss the indictment, and defense counsel indicated that he did not have a copy in court but would submit a copy after the hearing.
 

 [1]
 

 . The circuit court initially granted Robinson’s motion to dismiss one week after the hearing on the motion.
 

 [2]
 

 . There is no statute of limitations for the prosecution of any felony involving forgery. § 15 — 3—5(a)(6), Ala.Code 1975.
 

 [3]
 

 . We do not assume that the difficulty of subpoenaing an out-of-state witness automatically establishes that the witness would be
 
 *701
 
 unavailable for trial.
 
 See State v. Jones,
 
 35 So.3d 644, 658 (Ala.Crim.App.2009):
 

 "Jones did not explain or allege how the delay frustrated or impeded her ability to obtain Milton’s presence for trial. Instead, Jones complained merely that it would be difficult to subpoena Milton in Texas because Jones '[would] have to go through that Uniform Compact Act to get him subpoenaed, which may or may not be a problem.’ (R. 98.) Thus, the alleged prejudice appears in no way to be related to the delay attributable to the State’s actions, but rather is solely related to the statutory constraints Jones faced in formulating her defense strategy. Accordingly, the prejudice Jones faced is not attributable to the State's actions and the trial court erred in finding any actual prejudice on this ground.”
 

 See also Hobson v. State,
 
 625 So.2d 1168, 1170 (Ala.Crim.App.1993) (lack of effort in attempting to obtain a witness may be weighed against a defendant in a prejudice analysis).