JOINER, Judge,
dissenting.
I disagree with the manner in which the majority analyzes the record in this case; this case, at the very least, should be remanded for a hearing and for the circuit court to make specific, written findings regarding Ramirez’s motion to dismiss on speedy trial grounds. Accordingly, I dissent.
First, the majority opinion — concluding that “ ‘[t]he facts before us are undisputed’” and that “‘[tjhe only question to be decided is a question of law1 ” 184 So.3d at 1055 — applies a de novo standard of review. I disagree with these conclusions, as well as the application of a de novo standard of review. Although it may be true that there exists before this Court a cold record from which facts may be gleaned, it does not follow that the facts are undisputed. As I explain below, the nature and basis of the delays in this case are not apparent from the record; thus, a question necessarily exists regarding those delays. The paucity of detail regarding those delays is the very circumstance that prevents this Court from evaluating this case for an abuse of discretion. The circuit court, which has been involved in scheduling this case over the course of 97 months, necessarily had insight into the speedy-trial issue and would be entitled to some deference as to its the exercise of its discretion were this record more complete. See State v. Clay, 577 So.2d 561, 563 (Ala.Crim.App.1991) (“Likewise, the trial judge in the case at bar did not follow the guidelines set out in Barker v. Wingo, [407 U.S. 514 (1972),] before he dismissed this case on speedy trial grounds. Thus, the trial judge abused his discretion by dismissing the indictment.”).
Next, the majority states that “the record does not indicate which party moved to place the case on the administrative docket or if the court acted sua sponte,” but that “the record does indicate that neither the State nor Ramirez objected to the court’s action or moved to place the case back on the circuit court’s active docket for approximately four years.” 184 So.3d at 1057 (emphasis added). Notably, however, the majority’s conclusion is based on the following — and only — notation in the record regarding the transfer: “Ordered, case is transferred to the administrative docket.” (C. 17.) This, I believe, is an insufficient basis on which to evaluate the nearly 48-month delay — which comprises nearly half of the 97-month delay — that resulted from placing this case on the administrative docket. It is also certainly an insufficient basis on which to reverse the judgment of the circuit court, because the circuit court knew — from handling the case over the course of 97 months — why the case had been transferred to the administrative docket.
Likewise, the majority opinion states that, “[a]fter the circuit court placed the case back on the active docket, the court sua sponte continued the case six times.” 184 So.3d at 1057. Although it may be true that the record reflects that the case was continued or reset six times after Ramirez moved the circuit court to set the case for trial, the record fails to provide any insight into those actions. At most, the record *1061 reflects only that the case was reset or continued; thus, any conclusion by this Court that the resetting or continuing was “sua sponte” is speculative. Again, the circuit court — based on its experience with the case — would have had knowledge about the reasons for each of these six resets or continuances.
Regarding Ramirez’s assertion of her right to a speedy trial, the majority opinion concludes that “[ijndeed, Ramirez did not assert her right to a speedy trial until less than one month before her December 2013 trial date.” 184 So.3d at 1058. The main opinion fails to address, however, the fact that 20 months prior to her speedy-trial motion, Ramirez “move[d] th[e] [trial court] to set [her] cause on the next available trial docket.” (C. 40.) The circuit court granted this motion. (C. 41.) Although Ramirez did not use the words “speedy trial” in her motion, her motion plainly sets out her desire to be tried at the next available court date. “The ‘character of a pleading is determined and interpreted from its essential substance, and not from its descriptive name or title.’” Ex parte Alfa Mut. Gen. Ins. Co., 684 So.2d 1281, 1282 (Ala.1996) (quoting Union Springs Telephone Co. v. Green, 285 Ala. 114, 117, 229 So.2d 503, 505 (1969)). Despite the fact that Ramirez moved the circuit court for a prompt trial setting, her case was continued another six times. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), does not require a specific motion or argument; instead, the United States Supreme Court stated:
“We think the better rule is that the defendant’s assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It alloivs the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his at- . torney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.”
407 U.S. at 529 (emphasis added). Here, Ramirez plainly requested a prompt trial setting, and her motion was granted; I believe that this request is entitled to consideration regarding Ramirez’s assertion of her speedy-trial right.
Next — in addressing whether Ramirez has suffered any prejudice from the pretrial delay — the majority opinion states that “Ramirez has failed to allege, much less show, that her defense was impaired by'the delay,” 184 So.3d at 1059, and that “the delay in this ease experienced by Ramirez [did not] prejudice[] her to a degree that would warrant the dismissal of her indictment.” 184 So.3d at 1059. The majority does not, however, consider as part of the fourth Barker factor the length of the pretrial delay; the United States Supreme Court in Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), recognized that, in addition to looking at pretrial delay for the purposes of triggering a speedy-trial analysis, a court must also consider “the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.” 505 U.S. at 652. This analysis is “significant,” the Doggett Court concluded, “because ... the presumption that pretrial delay has prejudiced the accused intensifies over time.” Id.
*1062 The Alabama Supreme Court in Ex parte Walker, 928 So.2d 259 (Ala.2005)— interpreting this “second inquiry” regarding pretrial delay- — concluded that ■ “[a]t some point, the length of pretrial delay crosses a threshold, and, in addition to a finding of presumptive prejudice under the first Barker factor, an accused becomes entitled to a finding of presumed prejudice under the fourth Barker factor.” 928 So.2d at 269. The majority opinion, however, appears to discount the possible presumed prejudice associated with the significant pretrial delay in this case simply because Ramirez “was released on bond shortly after her indictment” and because “her defense was [not] impaired by the delay.” 184 So.3d at 1059. A finding of presumed prejudice — as discussed in Ex parte Walker— does not depend solely oh whether the accused was incarcerated or suffered demonstrable, specific harm. In short, the majority fails to adequately address whether, under the facts of this case, prejudice may be presumed.
Finally, I agree with the State that “[d]ue to the paucity of the record on appeal — something that Ramirez repeatedly references in her brief — it is impossible to fully understand how the trial court reached [its] conclusion[.]” (State’s reply brief,, p. 1.) Accordingly, I would — as the State suggests as an alternative avenue for relief — remand this case for a ’ Barker hearing. (State’s reply brief, p. 1.) In Parris v. State, 885 So.2d 813 (Ala.Crim.App.2001), we remanded that case to the circuit court for the circuit court to enter an “order containing detailed written findings regarding the Barker factors” after finding the following:
“From the record before us, we are ■unable to. determine the exact reasons for some of the delays; therefore, we are unable to determine whether the reasons were neutral' or whether they should be attributed to the government. For example, several continuances noted on the case action summary contain no reason for delay; several others indicate only that the case was ‘not reached. ’ Most troubling to us is that, on August 19, 1999, the trial court removed the case from the docket and directed the clerk to set the casé only on a specific order of the court. This Court is unable to make an informed decision regarding the reasons for this lengthy delay without additional information from the trial court.”
Parris, 885 So.2d at 825 (emphasis added). See also State v. Tolliver, 171 So.3d 94 (Ala.Crim.App.2014); State v. Robinson, 79 So.3d 686 (Ala.Crim.App.2011); State v. Stovall, 947 So.2d 1149 (Ala.Crim.App.2006).
In this case, like Parris, the basis for the numerous resets and continuances after Ramirez asked for the matter to be set for trial is unclear. Further,, the record does not indicate why this case was transferred to the administrative, docket. Accordingly, because of the “paucity” of the record, I would remand this matter for a Barker hearing.
For the foregoing reasons, I dissent.